

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| MEDIA GENERAL OPERATIONS, INC., d/b/a WSPA, and MEDIA GENERAL BROADCASTING OF SOUTH CAROLINA HOLDINGS, INC., § § § § § | | |
| Plaintiffs, § | | |
| vs. § | CIVIL ACTION NO.  7:05-1660-HFF-WMC | |
| § | | |
| PAUL GREGG, § § | | |
| Defendant. § | | |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## I.     INTRODUCTION

This is a trademark infringement action.  Defendant is proceeding *pro se*.  Plaintiffs assert that this Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a). Pending before the Court is Plaintiffs' motion for preliminary injunction.  Having carefully considered the motion, the response, the record, the argument of counsel, and the applicable law, it is the judgment of this Court that Plaintiffs' motion shall be granted.

## II.     PROCEDURAL HISTORY

Plaintiffs filed their complaint, along with their motion for preliminary injunction, on June 10, 2005.  The Court set a hearing for June 21, 2005, to consider Plaintiffs' motion.  At the commencement

of the hearing, and in light of Defendant's contention that he had "not been able to procure adequate representation concerning the magnitude of the issues[,]" Defendant's Amended Answer and Motions at 2, the Court suggested that Defendant consider voluntarily removing, in its entirety, the web site located at www.wspa.tv by noon (12:00 p.m.) on that same day. In exchange for such agreement, the Court postponed the hearing on the merits of Plaintiffs' motion for preliminary injunction for twenty (20) days so that Defendant would have additional time to retain counsel. Defendant consented in open court, on the record, to remove the above-referenced website.

A second hearing was scheduled for July 11, 2005, but postponed to July 14, 2005. Notice of the July 14, 2005, hearing date was mailed to Defendant on July 6, 2005. Neither Defendant nor Counsel for Defendant appeared in court for the July 14, 2005 hearing. Moreover, Defendant failed to appear on the date originally scheduled for the hearing.[1]

### III.     STANDARD OF REVIEW

The general standard for granting a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure calls for the Court to perform a "balance of hardships" test as set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 193 (4th Cir. 1977). It is sufficient to grant the motion for preliminary injunction if the Court is convinced that there is a probable right and a probable danger,

---

[1] Additionally, the Court notes that, in the days prior to the June 21, 2005, hearing, Defendant contacted the Court's staff on numerous occasions regarding the case. Except for one telephone call to the Court's staff on the day after the June 21, 2005, hearing, and a July 31, 2005, letter in which Defendant sought the Court's assistance with some unrelated state criminal charges, he has made no more contact with the Court or the Court's staff.

and that the right may be defeated, unless the injunction is issued. Considerable weight is given to the need of protection to the plaintiff as compared with the probable injury to the defendant. *Id.* at 193.

*Blackwelder* sets forth four factors to be considered by a trial court in deciding whether to grant a preliminary injunction: "(1) the likelihood of irreparable harm to the plaintiff if the injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." *East Tennessee Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004).

Under the general preliminary injunction standard, the first step requires a balancing of the first two factors. The necessary level of inquiry at the next step, success-on-the-merits, depends upon how decided the imbalance of harms is. "If, after balancing those two factors [i.e., irreparable harm to plaintiff against harm to the defendant], the balance tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation. As the balance tips away from the plaintiff, a stronger showing on the merits is required." *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991) (quotations and citations omitted). The final step is to consider the public interest.

**IV.    FINDINGS OF FACT**

1.     Plaintiffs own and operate a television station licensed by the Federal Communications Commission to operate in the public interest under the call sign "WSPA-TV."

2.     WSPA-TV has used the call letters "WSPA" continuously since April 29, 1956.

3

3. WSPA-TV broadcasts programs and operates an Internet website that provides news, weather and other information through its domain name, www.wspa.com.

4. WSPA-TV has invested a significant amount of time and money in advertising and promoting its call letters, and has acquired trademark rights in those call letters as a service mark.

5. Defendant is a former employee of WSPA-TV, and on or about May 17, 2005, registered the domain name, www.wspa.tv.

6. Prior to the initiation of this litigation, Plaintiffs determined that Defendant was operating a website at www.wspa.tv which proclaimed it was "WSPA-TV on line."

7. The website wspa.tv has also displayed advertising for products sold by Defendant as well as an address for another site operated by Defendant under the domain name "www.shadetreehandyman.com."

8. WSPA-TV has not given Defendant permission to use its service mark as a domain name or otherwise, and Defendant has no trademark or intellectual property rights in the wspa.tv domain name.

9. The domain name does not consist of Defendant's legal name, nor any names commonly used to identify Defendant nor does it offer goods or services relating to WSPA-TV.

10. Defendant's use of WSPA-TV's mark is likely to cause confusion, mistake or deception as to the source or origin of Defendant's website, products or services.

11. Persons going to wspa.tv. to seek information about WSPA-TV are likely to be misled.

12. Defendant has no economic interest in WSPA-TV's mark, and there is no risk of injury to Defendant in the event he is precluded from using the domain name wspa.tv.

13. The harm to Plaintiffs is the continuing possibility of confusion, and the erosion of good will resulting from viewers' expectations regarding the receipt of news and information from WSPA-TV not being met on the wspa.tv website.

14. Injury to Plaintiffs by the continued operation of the website appears probable while no injury is likely to occur to Defendant in the event that his use of the domain name is preliminarily enjoined.

15. The harm to Plaintiffs from continued use of the domain name appears to the satisfaction of the Court to be irreparable.

16. Since WSPA-TV is licensed to operate in the public interest. The public has an interest in not being misled by Defendant's domain name when seeking news and information from Plaintiffs' website.

17. Defendant made demand on Plaintiffs for payment in exchange for cessation of his use of the wspa.tv domain name.

18. On June 21, 2005, Defendant agreed to remove or "take down" the wspa.tv website. As of July 14, 2005, however, and through the date of this Order, the domain name remains active and a user reaching that domain is greeted by the internet address of "shady.shadetreehandyman.net" and encounters the bold notice "This Account Has Been Suspended" followed by "Please contact the billing/support department as soon as possible." The Court finds that there is a strong probability that this message could be interpreted by some as indicating some financial distress or misconduct on the part of Plaintiffs.

### V.   CONCLUSIONS OF LAW

As already noted, "[i]f, after balancing those two factors [i.e., irreparable harm to plaintiff against harm to the defendant], the balance tips decidedly in favor of the plaintiff, a preliminary injunction will be granted if the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Rum Creek,* 926 F.2d at 359 (quotations and citations omitted). Balancing the respective interests of the parties, the Court is convinced that the likelihood of irreparable harm to Plaintiffs if the injunction is denied appears certain while there is no likelihood of harm to Defendant if the injunction is granted.[2] The Court is also of the firm opinion that Plaintiffs have "raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." *Id*. Accordingly, the motion for preliminary injunction shall be granted.

Nevertheless, even if the Court were to consider the likelihood-of-success-on-the-merits factor, Plaintiffs would still prevail. Plaintiffs' claim is rooted in the Anti-Cybersquatting Consumer Protection Act, (ACPA). 15 U.S.C. § 1125(d). To establish this claim, Plaintiffs must demonstrate (1) that Defendant had a bad faith intent to profit from Plaintiffs' mark, and (2) that Defendant had registered, trafficked or used a domain name that is identical to or confusingly similar to WSPA-TV's distinctive mark. *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359 (4th Cir. 2001); 15 U.S.C. §1125(d). The use of a domain name is improper under the ACPA when the user has no trademark or intellectual property rights in the domain name, the domain name is not the user's legal name or a name

---

[2]Although not asserted by Defendant, the only harm that the Court can fathom that he might maintain is one based in a First Amendment free-speech claim. Since Defendant is free to exercise that right at a website that does not likely run afoul of the law, however, this claim, even if proffered, would fail.

commonly used to identify him, the user is using the mark inconsistently with the good will of the owner of a legal mark, and the user has demanded money in exchange for giving up the domain name. The use of the wspa.tv domain name by Defendant here has each of the characteristics of misuse identified in *People for the Ethical Treatment of Animals, supra*, leading to the conclusion that Plaintiffs are likely to succeed on the merits and are entitled to relief.

Further, the public interest that led to the adoption of the ACPA, the protection of Internet users from being misled, *People for the Ethical Treatment of Animals*, *supra*, is served by granting relief to Plaintiffs to prohibit Defendant's misuse of the WSPA call sign.

## VI.   CONCLUSION

In light of the foregoing discussion and analysis, it is the opinion of this Court that

1. Defendant shall immediately remove all material from the www.wspa.tv website, and no links, material or other information shall be posted by or on behalf of Defendant at that site;

2. Defendant shall make no further use of WSPA or WSPA-TV on any website or in any domain name pending further order of this Court; and,

3. This Order shall be enforceable by the contempt power of this Court, and Defendant is subject to being held in contempt, fined, imprisoned, or both for failing to comply with the terms of this Order.

**IT IS SO ORDERED.**

Signed this 2nd day of September, 2005, in Spartanburg, South Carolina.

<u>s/Henry F. Floyd</u>
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE